165 F.3d 33
 82 A.F.T.R.2d 98-7138
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES OF AMERICA, Plaintiff-Appellee,
v.
Jeffrey GERARDO, Defendant-Appellant.
 No. 97-3869.
 United States Court of Appeals, Seventh Circuit.
 Argued Nov. 6, 1998.
Decided Nov. 13, 1998.
 
 Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. No. 96 CR 48. David H. Coar, Judge.
 Before Hon. WALTER J. CUMMINGS, Hon. FRANK H. EASTERBROOK, Hon. TERENCE T. EVANS, Circuit Judges.
 
 Order
 
 1
 Jeffrey Gerardo pleaded guilty to bank fraud and conspiracy to defraud the United States. His appeal is limited to the contention that the 46-month sentence he received is excessive.
 
 
 2
 After Gerardo took over control of Gerardo & Son Motor Service, Inc. from his father, he instructed the company's bookkeeper not to remit payments for withholding taxes, but to file false tax forms indicating that the payments had been made. The tax loss ultimately exceeded $1 million. Some of the money that should have been paid as trust-fund taxes was diverted to other firms Gerardo controlled in order to reduce the probability of collection. One transferee was Newport Leasing. In order to avoid detection, Gerardo contended that "Richie Urso" owned Newport Leasing. "Urso" was a pseudonym he adopted--but on at least one occasion Gerardo persuaded someone to appear before IRS auditors and claim to be Urso. At this meeting Gerardo's stooge stated (at his instance) that Newport Leasing lacked assets; that representation was false.
 
 
 3
 In 1991, with the IRS closing in, Gerardo caused Gerardo & Son and another firm he controlled to file for bankruptcy. Forms filed in the bankruptcy falsely represented the financial situation of the affiliated corporations and concealed transfers to Newport Leasing. Gerardo answered "none" to questions about inter-corporate transfers in the preceding year; in fact Gerardo & Son had transferred more than $388,000 to Newport Leasing during that period. At a deposition Gerardo stated that he had no knowledge of Newport Leasing, even though he had complete control of that firm and its assets. The affiliated firms also carried on a check kite to obtain funds without demonstrating creditworthiness. One bank lost approximately $250,000 from the scheme. (Although Gerardo eventually covered the principal loss, the bank never recovered the time value of the money.)
 
 
 4
 After calculating a base offense level based on a loss exceeding $1 million, the district court added two levels each for the use of sophisticated means to avoid detection, U.S.S.G. § 2T1.1(b)(2), a leadership role in the offense, § 3B1.1(c), and obstruction of justice, § 3C1.1. Although Gerardo attacks each adjustment, his argument boils down to the contention that these adjustments are duplicative. The conduct underlying each was the same, he insists, and therefore using all adjustments is double counting. This position is unsound. See Furkin v. United States, 119 F.3d 1276 (7th Cir.1997). The leadership adjustment depends on the fact that Gerardo organized and directed others (including the bookkeeper and the confederate who pretended to be Urso). The sophisticated-means adjustment depends on the fact that Gerardo played a corporate shell game. Finally, the obstruction adjustment stems from Gerardo's deceit during the tax investigation. Each component of his activity was logically separate from the others. Gerardo could have overseen others without using sophisticated means to avoid detection; he could have played the shell game without the aid of subordinates (though the asset-shuffling would have been harder); he could have both overseen subordinates and played a shell game without lying to the IRS or committing perjury in the bankruptcy case. Gerardo was more dangerous--more likely to get away with a substantial fraud before being caught--because of the use of multiple corporations and a cover-up once the IRS was on the scent than he would have been had he just played the leader in a scheme to avoid paying one corporation's trust-fund taxes. The three adjustments therefore were in order, lest important differences in culpability and risk to the public go unrecognized.
 
 
 5
 Gerardo's remaining contention does not require comment in light of U.S.S.G. § 5G1.2(b). Any error worked in Gerardo's favor.
 
 AFFIRMED